Michael J. Teter (16734)
TETER & VU LLC
57 W. 200 South, Suite 250
Salt Lake City, UT 84101
(385) 297-1815
michael@tetervu.com

*Attorney for Terrie Coburn*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TERRIE COBURN,<br><br>    Plaintiff,<br><br>vs.<br><br>THE HOME DEPOT/HOME DEPOT U.S.A., INC.,<br><br>    Defendant. | **COMPLAINT**<br><br>**Civil No. 4:20-cv-00005-DN**<br><br>**JUDGE DAVID NUFFER**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Terrie Coburn ("Terrie") hereby alleges and complains against The Home Depot/Home Depot U.S.A., Inc. ("Home Depot") as follows:

## NATURE OF THE CASE AND PARTIES

1.     This is a civil action for damages and other relief against Defendant Home Depot under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA").

2.     Plaintiff Terrie Coburn is a resident of Marysvale, Utah.

3.     At all relevant times, The Home Deport has continuously, and is now, a corporation doing business in the State of Utah and the City of Richfield, and has continuously had, and does now have, at least fifteen employees.

1

4.	At all relevant times, Home Depot has continuously been, and is now, an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

5.	At all relevant times, Home Depot has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## JURISDICTION AND VENUE

6.	Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

7.	Venue is proper in the District of Utah pursuant to 28 U.S.C. § 1391(b) and (c). The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Utah.

## ADMINISTRATIVE PROCEDURES

8.	Terrie filed a charge with the Equal Employment Opportunity Commission (EEOC) on October 17, 2019, related to actions that had occurred less than 300 days earlier.

9.	The EEOC issued a right to sue letter dated November 8, 2019.

## FACTUAL ALLEGATIONS

10.	Terrie began working as a part-time cashier at Home Depot in Richfield, Utah on July 21, 2014.

11.	In or about December 2014, Terrie was promoted to Project Specialist, part-time.

12.	In or about March 2015, Terrie was promoted to Flooring Specialist, part-time. Approximately two weeks later, she was promoted to Flooring Department Supervisor, full-time.

13.	In or about September 2015, Terrie was promoted to Pro Desk Supervisor.

14.	In or about June 2016, Terrie took a medically required leave of absence for a hysterectomy.

15.     Around this same time, Brandon Ibarra became the Store Manager. Terrie's workload increased dramatically upon her return, with Mr. Ibarra placing demands on her that created health problems.

16.     Terrie managed to keep up with the additional work by taking work home with her and working off the clock. Home Depot employees would call her with work-related questions on her days off, as well.

17.     In or about August 2017, the store was number one in the district for sales, based mainly on the sales growth at the Pro Desk that Terrie managed.

18.     In or about October 2017, Terrie was promoted to Merchandising Assistant Manager. In this role, Terrie oversaw seven departments, as well as being responsible for store signages, which she had to make by hand.

19.     On May 30, 2018, at approximately 4:00 a.m., Terrie fell and broke her leg and ankle while carrying an armload of Home Depot signage to her car to bring to work that day.

20.     Terrie was afraid of being late, so went to work anyway. She asked another employee to come to work early so that Terrie could leave to go to the doctor.

21.     After the doctor appointment, Terrie returned to work, but struggled to walk and get around.

22.     Terrie nevertheless continued to work for the next several weeks.

23.     Mr. Ibarra told her that she would be better off limping around and saying nothing rather than begging for sympathy. He told her that he had known other employees who had tried to get sympathy after an accident and that it did not work out well for them. There are witnesses to these statements.

24. By the end of June, the pain was too severe for Terrie to continue. She went to an emergency room and an x-ray revealed a broken leg and ankle, requiring surgery.

25. Terrie brought doctor reports and medical records to Home Depot to document her medical condition.

26. Mr. Ibarra thereafter wrote an email to Terrie stating: "Good leaders don't need legs." He included a smiley emoji with that note.

27. Terrie took a medically necessary leave of absence for her surgery and recovery from approximately June 20, 2018 to December 23, 2018.

28. During her leave of absence, Mr. Ibarra would regularly contact Terrie and request information and ask her to complete various tasks.

29. Home Depot refused to pay Terrie during her leave of absence, despite medical documentation showing her injury and surgery.

30. On December 23, 2018, Terrie returned to work. She was still required to wear a walking boot.

31. When she returned to work, Terrie submitted a medical accommodation form that requested that she receive a closer parking space and reduced time walking around the store. Home Depot made no accommodations regarding walking around the store.

32. In January 2019, Home Depot's corporate office decided that Pro Departments would no longer fall under the merchandising assistant store manager. That should have meant that Terrie no longer oversaw the Pro Department.

33. Despite this, Mr. Ibarra required Terrie to continue to complete Pro Department responsibilities.

34. In addition, as a key carrier, Terrie was being required to respond to requests all over the store from associates and customers.

35. Because she was still in her walking boot, and occasionally needed crutches to get around, Terrie met with Mr. Ibarra and Ashley Willden on January 28, 2019. She asked that another key carrier be scheduled to work at the same time as her, as an accommodation to her disability.

36. Mr. Ibarra did not approve the request.

37. In or about mid-March, Terrie turned in another Home Depot accommodation form requesting a closer parking space and reduced in-store walking time. Home Depot did not approve the requested accommodations.

38. Mr. Ibarra then began a series of retaliatory actions against Terrie. For example, he made Terrie come in on her days off to deliver Department Supervisor reviews. Mr. Ibarra indicated he wanted to sit in on all review deliveries, but then when Terrie came in on her days off to meet with the department supervisors, Mr. Ibarra postponed her meetings because he got "tied up." Mr. Ibarra then noted in Terrie's file that her reviews were late. Mr. Ibarra also required Terrie, but not other assistant store managers, to send him the reviews for approval.

39. In addition, Mr. Ibarra excluded Terrie from Home Depot meetings that Terrie was expected to attend.

40. On April 1, 2019, Terrie sent District Human Resources Manager Brad Simmons an email regarding, among other things, the lack of accommodations and that the situation with her leg was getting worse for lack of accommodations. Mr. Simmons asked that Terrie call him, rather than communicate over email. Mr. Simmons informed Terrie that her medical accommodations requests had not been filed.

41.     On April 12, 2019, Mr. Ibarra called Terrie into his office for her to file a medical accommodation request. Terrie informed him that she would need to go back to her specialist to get the medical note he was requiring and that it usually took three weeks to get an appointment. Mr. Ibarra insisted that Terrie needed to file the request that day and told her that they could add the doctor's note in later.

42.     On or around April 24, 2019, Terrie was informed that her medical accommodation request had been denied due to not including a doctor's note.

43.     On April 26, 2019, Home Depot terminated Terrie. The stated reason was that they suspected Terrie of having a romantic relationship with a male employee and for allegedly changing that employee's time entries.

44.     These proffered reasons are pretext. Terrie was not in a romantic relationship with any Home Depot employee. And the conduct they alleged regarding the time clocks was conduct that every assistant store manager engaged without discipline.

## FIRST CAUSE OF ACTION

45.     Terrie realleges the allegations contained in the preceding paragraphs.

46.     The Home Depot violated Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5).

47.     Terrie was a qualified individual with a disability under Title I of the ADA.

48.     Home Depot was aware of Terrie's disability, its substantially limiting effect on her, and her need for reasonable accommodation.

49.     Home Depot failed to provide the reasonable accommodation that Terrie needed or any other accommodation.

50.     As such, Home Depot deprived Terrie of equal employment opportunities and otherwise adversely affected her status as an employee because of her disability, thereby violating the ADA.

51.     Home Depot acted with malice and with reckless indifference to Terrie's federally protected rights.

## SECOND CAUSE OF ACTION

52.     Terrie realleges the allegations contained in the preceding paragraphs.

53.     The Home Depot violated Title I of the ADA, 42 U.S.C. § 12203.

54.     Terrie requested reasonable accommodations because of her disability.

55.     Instead of providing those accommodations, Home Depot retaliated against Terrie in multiple ways, including her ultimate firing.

56.     As such, Home Depot deprived Terrie of equal employment opportunities and violated the ADA.

57.     Home Depot acted with malice and with reckless indifference to Terrie's federally protected rights to be free from retaliation for her medical conditions and for seeking reasonable accommodations.

## PRAYER FOR RELIEF

WHEREFORE, Terrie prays for judgment against Defendants as follows:

1. For damages suffered as a result of the actions of Defendant as set forth above;
2. For punitive damages against Defendant for the actions set forth above;
3. For the costs and attorney fees incurred herein; and
4. For such other and further relief as the court deems just and proper.

RESPECTFULLY SUBMITTED this 6th[th] day of February, 2020.

                                                  TETER & VU LLC

                                                  /s/ Michael J. Teter
                                                  *Attorney for Terrie Coburn*